11 GAUDIN, Judge.
Herman Eisbruckner was convicted by a Jefferson Parish jury of the second degree *40 murder of Mrs. Dorothy Geoghegan, who died of asphyxia due to smoke inhalation. The state contended and the jury found that Eisbruckner set fire to Mrs. Geoghegan’s residence on July 31, 1991 while she was inside. We affirm.
The main evidence against Eisbruckner was the testimony of his wife, Gloria, who placed Eisbruckner at the crime scene, 21 Colonial Club Drive in Harahan, Louisiana, and also said that Eisbruckner admitted killing Mrs. Geoghegan.
On appeal, Eisbruckner assigns two district court errors:
(1) the trial judge erred in admitting evidence of other crimes, i.e., evidence of other fires intentionally set by him; and
(2) the evidence was insufficient to support a guilty verdict.
An arson investigator testified at trial that the Geoghegan fire had four separate points of origin. Mrs. Geoghegan, who had numerous physical ailments and who could not walk without assistance, was unable to use a so-called lifeline button because, according to police testimony, she had been knocked unconscious before the fire was started.
Mrs. Eisbruckner was hired in early 1990 to be Mrs. Geoghegan’s caretaker, dropping by periodically during the day to tend to Mrs. | aGeoghegan’s needs. During the course of her employment, Mrs. Eisbruckner began embezzling money from Mrs. Geoghe-gan through credit card fraud and through unauthorized transfer of funds from an investment account. Approximately $45,000.00 was embezzled before Mrs. Geoghegan’s children became suspicious. A meeting between Mrs. Eisbruckner and the children to discuss Mrs. Geoghegan’s finances was scheduled for the day of the fire.
Early that morning (July 13, 1991), Mrs. Eisbruckner said that she and her husband drove to Mrs. Geoghegan’s home. This was about 4:30 a.m. Mrs. Eisbruckner said she left Eisbruckner at Mrs. Geoghegan’s house while she (Mrs. Eisbruckner) went to a nearby lime Saver store for coffee and juice for Mrs. Geoghegan. Mrs. Eisbruckner testified that she knew Eisbruckner had entered the Geoghegan residence before she left because she saw the kitchen light go on. When Mrs. Eisbruckner returned, she said, Eisbruckner was outside pacing in the walkway. Mrs. Eisbruckner then drove her husband home, she said, and returned to the Geoghegan residence to find smoke coming out of the door. She summoned help but it was too late to save Mrs. Geoghegan.
From the record, it appears that Eisbruck-ner was completely supported financially by his wife.
ASSIGNMENT NO. 1
Prior to trial, the prosecution notified Eisbruckner that it intended to use evidence of other crimes. The notice read:
“In accordance with the La.Code of Evidence, Article 404b (1), you are hereby notified that the State of Louisiana intends to use evidence of other crimes and threats committed by the defendant. The State will show (through evidence to be presented at the hearing on this matter) that 1) on 11/13/77 the ^defendant set fire to Apt. 18-C of the Andrews Gardens Apartments (in Charleston, S.C.) And on 02/18/78 pleaded guilty to Malicious Injury to Real Property 2) on 03/18/80 the defendant set fire to his bunk mattress in the City Lockup in Charleston, S.C. and pleaded guilty to damage of private property and 3) on or about January 1992 threatened to burn down a trailer located at 247 Marmandie Ave.
“The purpose of using said crimes and threats is to show the defendants (sic) knowledge, intent, system and motive.
Following a so-called Prieur hearing, the trial judge issued the following ruling:
“As to the Prieur motion the evidence of other crimes by the defendant is hereby allowed. The Court believes that the State’s purpose in introducing this evidence is to show the defendant’s knowledge, intent, system and motive. This evidence is not being introduced to prove the character of the accused.
“Under Article 404(B) as well as Prieur and its progeny, the criteria for introduction of evidence of other crimes is the evidence is not merely repetitive and cumulative; the evidence is introduced for a
*41 relevant purpose, and it’s not a subterfuge for depicting the defendant’s bad character; and the evidence introduced serves the actual purpose for which it is offered.
“Here, all of the other offenses the State wants to introduce involve the intentional use of fire or arson, or the conscious threat to use fire or arson by the defendant. Clearly, these crimes are similar enough to be relevant to proving the offense of First Degree Murder[1] during the commission of an aggravated arson.
“The fact that the crimes are not identical and that they are not closely related in time is irrelevant under the cases interpreting Prieur.
“Because this evidence of other crimes it is not cumulative or repetitive, and because it is not a subterfuge for depicting defendant’s bad character and because it is relevant to prove defendant’s knowledge, intent, system and motive it is hereby allowed.”
Eisbruckner filed for writs but this Court denied the application, finding no error. At trial, evidence of the two prior crimes and the January, 1992 threat were admitted.
14Under State v. Prieur, 277 So.2d 126 (La.1973), and Art. 404B, the basic criteria for introduction of evidence of other crimes, as correctly stated by the trial judge, is (1) the evidence is not merely repetitive and cumulative, (2) the evidence is introduced for a relevant purpose and is not a subterfuge for depicting the defendant’s bad character and (3) the evidence serves the actual purpose for which it is offered. See also State v. Hatcher, 372 So.2d 1024 (La.1979).
Here, we cannot say the trial judge erred. Eisbruckner’s inclination to intentionally set things on fire when upset or provoked was relevant to show he intended to and did in fact set fire to Mrs. Geoghe-gan’s house. Evidence of other crimes is allowed when the probative value outweighs its prejudicial effect. See State v. Hamilton, 478 So.2d 123 (La.1985), cert, denied at 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).
Although the prior fires were set in 1977 and 1980, some years before Eisbruckner’s three-day trial in September, 1995, this is a matter which addresses itself to the weight of the evidence and not its admissibility. See State v. Frezal, 278 So.2d 64 (La.1973); also, State v. Driggers, 554 So.2d 720 (La.App. 2 Cir.1989), and State v. Howard, 520 So.2d 1150 (La.App. 3 Cir.1987).
There is no reversible error in this assignment of error.
ASSIGNMENT NO. 2
In this assignment of error, Eisbruck-ner argues that his wife had the better motive for wanting to kill Mrs. Geoghegan and that her (Mrs. Eisbruekner’s) testimony at trial was “preposterous” and “incredible.” Mrs. Eisbruckner was originally indicted for the murder of Mrs. Geoghegan; further investigation, however, revealed Eisbruckner’s involvement. The Ucase was resubmitted to the Grand Jury, which then indicted Eis-bruckner.
At trial, Mrs. Eisbruckner admitted being a liar, thief and embezzler. No stone was left unturned in the defense’s assault on her character and credibility. The jury also knew that the murder charge against Mrs. Eisbruckner was dismissed after she agreed (1) to plead guilty to 10 counts of theft of items valued over $500.00[2] and (2) to testify against Eisbruckner. The jury also knew that several days before the fire Mrs. Eis-bruckner had told a credit card company representative that Mrs. Geoghegan had died. Money was owed to this company because of Mrs. Eisbruekner’s fraudulent use of the credit card.
Yet the jury believed Mrs. Eisbruckner’s testimony about Eisbruckner being inside the Geoghegan house the morning of the fire. And they believed her and her daughter Denise when they said that in a three-way telephone conversation between them and Eisbruckner, Eisbruckner stated that he “... did kill that old lady.”
*42 Denise also said that Eisbruckner never worked at a job as long as she knew him but that he once displayed a “wad” of 50- and 100-dollar bills.
Mrs. Eisbruckner further testified that once while Eisbruckner was visiting her while she was in jail (before Eisbruckner was indicted), he admitted killing Mrs. Geoghe-gan. Mrs. Eisbruckner said that at another time, in a courtroom, Eisbruckner not only admitted to Mrs. Eisbruckner that he was responsible for Mrs. Geoghegan’s death, but he was going to tell the District Attorney that he and not his wife had killed Mrs. Geoghegan. However, Eisbruckner never told the District Attorney or anyone else that he set the Geoghegan fire.
Is A jury’s credibility calls are generally not disturbed on appeal, as appellant asks this Court to do. An appellate court, however, must determine if any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the elements of the crime were proven beyond a reasonable doubt. This is the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard.
Eisbruckner was convicted of second degree murder while engaged in perpetration of aggravated arson. Aggravated arson, LSA-R.S. 14:51, is the intentional setting fire to any structure whereby it is foreseeable that human life might be endangered. Eisbruckner did not testify; therefore, his attorney at trial could only try to show, particularly by cross-examination of Mrs. Eis-bruckner and by closing argument to the jury, that her version of events was obviously and for very good reasons fabricated.
Nobody actually saw Eisbruckner start the fire but if the jury believed Mrs. Eisbruckner and her daughter, as no doubt they did, this testimony, along with other state’s evidence, would meet the Jackson v. Virginia criterion and would support the guilty verdict. Eis-bruckner was sentenced to life imprisonment without benefit of pardon, parole or suspension of sentence.
We did find one error patent. Eisbruck-ner was not informed of the provisions of LSA-C.Cr.P. art. 894.1 D. We remand for the trial judge to send appropriate written notice of Eisbruckner, and to place in this record proof that the notice was received.
AFFIRMED; REMANDED FOR LIMITED PURPOSE.

. Later amended to Second Degree Murder.

. Mrs. Eisbruckner was sentenced to three years on each count, a total of 30 years.